[No. 58208-4.   En Banc.   November 5, 1992.]

SPOKANE COUNTY HEALTH DISTRICT, ET AL, *Respondents*, v. DONALD C. BROCKETT, ET AL, *Appellants*, THE BOARD OF PHARMACY, ET AL, *Respondents*.

*Donald C. Brockett, Prosecuting Attorney, James P. Emacio, Chief Deputy,* and *Robert B. Binger, Deputy,* for appellants Brockett and Erickson.

*Kenneth O. Eikenberry, Attorney General,* and *William L. Williams, Senior Assistant,* for appellants State and Eikenberry.

*Edward J. Parry,* for respondents Spokane County Health District and Beare.

*James C. Sloane, City Attorney,* and *Laurie Flinn Connelly, Assistant,* for respondents City of Spokane, Spokane County, and Mangan.

*Rohan, Goldfarb & Shapiro, P.S.,* by *Robert J. Rohan, Special Counsel,* for respondents Gardner, Board of Health, Department of Health, Board of Pharmacy, and Region I AIDS Network.

*Robert J. Rohan,* on behalf of Washington State Medical Association, Washington State Nurses Association, Washington State Hospital Association, and Washington State Hospice Organization, amici curiae.

DOLLIVER, J. — Spokane County Prosecuting Attorney Donald C. Brockett, Spokane County Sheriff Larry V. Erickson, and State Attorney General Kenneth O. Eikenberry (hereinafter defendants) challenge a trial court decision which approved a needle exchange program in Spokane County. Defendants contend the program constitutes an unlawful distribution of drug paraphernalia.

The facts in this case are undisputed. Human immunodeficiency virus (HIV) is a blood-borne virus transmitted most frequently by unprotected sexual intercourse or the sharing of HIV contaminated needles and syringes among intravenous drug users (IVDUs). Acquired immunodeficiency syndrome (AIDS) is the end stage of an infection caused by HIV and is always fatal. The Washington State Office of Epidemiology and Surveillance estimates between 9,000 and 14,000 state residents are infected with HIV. By October 10, 1990, 2,018 "full blown" AIDS cases had been reported in Washington. Of those cases, approximately 20 percent reported IV drug use as one of their behavioral risk factors. IVDUs are the second largest transmission category in the United States to have developed AIDS and are the fastest growing transmission category for new AIDS cases. IV drug use is the primary source of HIV infection in heterosexuals and children. IVDUs spread the virus among themselves by sharing and reusing infected injection equipment, *i.e.*, needles and syringes.

In 1990, the plaintiff Spokane County Health District (SCHD) Board of Health adopted a resolution which

directed its health officer, John A. Beare, M.D., to establish and implement a needle exchange program in Spokane as a part of an overall intervention to slow the spread of AIDS and other infectious diseases among IVDUs and those with whom they come into contact. The Board directed that the program be included in the Regional AIDS Network Plan authorized by RCW 70.24.400. *See generally* RCW 70.24 (also known as the omnibus AIDS act or AIDS act).

The SCHD adopted the plan after considering information presented over the course of at least 12 meetings. A detailed protocol for operation of the plan was also adopted. The protocol directed that, during hours of operation, clean needles would be exchanged for dirty needles on a 1-for-1 basis only. IVDUs would not be allowed simply to ask for needles but would be required to exchange used equipment. In addition, individuals exchanging needles would be encouraged to take condoms, bleach (for sterilizing needles and syringes), and informational brochures. Participants would also be asked to complete questionnaires. HIV testing and counseling would be available, and referrals to drug treatment programs would be offered.

The program did not start immediately. Prior to the time the SCHD began considering its needle exchange program, other needle exchange programs had begun operating in Tacoma and Seattle. On July 18, 1989, the Washington State Attorney General issued opinion 13, in which he stated a Regional AIDS Service Network (as established under the AIDS act) may not lawfully authorize the distribution of hypodermic needles to IVDUs, because the Uniform Controlled Substances Act (RCW 69.50) (UCSA) forbids the distribution of "drug paraphernalia". Following notice of that opinion, the City of Tacoma withdrew its financial support of the needle exchange program in Tacoma. The Tacoma-Pierce County Health Officer commenced an action in Pierce County Superior Court against Pierce County and the City of Tacoma for declaratory judgment that the needle exchange program was legal. In April 1990, Pierce County

Superior Court Judge Robert H. Peterson ruled the Tacoma program did not violate the UCSA as the Attorney General contended. The action resulted in a declaratory judgment in favor of the health officer, and the court stated:

[I]t is legal for public health officials and regional directors of AIDS service networks, and those operating under their supervision, to exchange or distribute intravenous needles to those who may use them to inject illegal drugs, as part of an HIV/AIDS prevention program.

While the primary focus of Tacoma's exchange program, as well as other regions', is to halt the spread of HIV and AIDS, it has been successful on numerous levels. Prior to the Tacoma program's initiation, public rest rooms, parks, and streets in the city were littered with used, discarded needles and syringes. Due to the needle exchange, there has been such a significant reduction in discarded needles that the problem has almost been eliminated. Moreover, police officers monitoring the program have seen no increase in the number of IVDUs or in the frequency of injection. Finally, more than 300 IVDUs have entered drug treatment as a direct result of the Tacoma exchange.

Plaintiff Dr. Beare, as SCHD Health Officer and as Director of the Region I AIDS Service Network, submitted to the SCHD Board of Health the data, evidence, pleadings, and judgment in the Tacoma-Pierce County case as they occurred. Following Judge Peterson's decision, the SCHD Board adopted its plan in July 1990. However, defendant Prosecuting Attorney Donald Brockett indicated that, given the Attorney General's position, he would take action against the participants if the needle exchange program began operation. Fearing prosecution, the SCHD brought an action in Spokane County Superior Court seeking an order that its program is lawful.

The SCHD presented a substantial body of evidence, including the testimony of numerous health care workers, volunteers, and public officials, concerning the alarming spread of HIV and number of AIDS cases. In addition, plain-

tiffs provided abundant evidence of the efficacy of needle exchange programs in other countries and cities, including Seattle and Tacoma. Defendants submitted no substantive evidence challenging the efficacy of the proposed needle exchange program. Instead, they argued the program constituted a criminal offense, *i.e.*, unlawful distribution of drug paraphernalia, as a matter of law. Judge Donohue of the Spokane County Superior Court ruled in favor of plaintiffs, finding the needle exchange program lawful.

Defendants sought and were granted review in this court. *See* RAP 4.2(a)(4). We note that, at the trial court level, the SCHD named numerous parties as "defendants", some of whom have chosen not to participate on appeal. Many others originally named as defendants actually support the trial court's decision and requested they be redesignated as plaintiffs/respondents on appeal. The only remaining defendants/appellants are Spokane County Prosecuting Attorney Donald Brockett, Spokane County Sheriff Larry Erickson, and State Attorney General Kenneth Eikenberry.

The controversy in this case centers, essentially, around two statutes. The first, RCW 69.50.412(2), makes it a misdemeanor to deliver drug paraphernalia knowing it will be used to inject a controlled substance illegally. The second, RCW 70.24.400, is part of the omnibus AIDS act, which creates regional AIDS service networks. Under the AIDS act, the largest county in each region is directed to develop a service "plan" which meets listed statutory requirements. RCW 70.24.400 states the plan shall include, among other things, "[i]ntervention strategies to reduce the incidence of HIV infection among high-risk groups, possibly including needle sterilization and methadone maintenance". RCW 70.24.400(3)(b)(v). In addition, "[t]he use of appropriate materials may be authorized by regional AIDS service networks in the prevention or control of HIV infection." RCW 70.24.400(12).

Defendants contend the SCHD's needle exchange program is unauthorized and illegal given the fact RCW 69.50-.412(2) (drug paraphernalia act) prohibits the distribution of

drug paraphernalia. RCW 69.50.412(2) provides, in relevant part:

> It is unlawful for any person to deliver . . . drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to . . . inject . . . or otherwise introduce into the human body a controlled substance. Any person who violates this subsection is guilty of a misdemeanor.

Hypodermic needles are included in the definition of "drug paraphernalia". RCW 69.50.102(a) includes the following language:

> As used in this chapter, "drug paraphernalia" means all equipment, products, and materials of any kind which are used, intended for use, or designed for use in . . . injecting . . . or otherwise introducing into the human body a controlled substance. It includes, but is not limited to:
> . . . .
> (11) Hypodermic syringes, needles, and other objects used, intended for use, or designed for use in parenterally injecting controlled substances into the human body . . . ..

It is undisputed the needles at issue in this case are "drug paraphernalia". Those distributing the needles know they will be used to inject controlled substances unlawfully. Nevertheless, plaintiffs argue, the needle exchange program is authorized under the Washington Constitution, statutes granting broad powers to local health officials, and the omnibus AIDS act. Therefore, they conclude, the drug paraphernalia act, which is aimed at criminal conduct, simply does not apply to their actions. We agree, finding the SCHD's needle exchange program permissible under the constitution and statutes of this state.

The trial court recognized, and plaintiffs point out, the broad authority vested in the SCHD Board of Health and health officer. Those entities derive their power from the Washington Constitution, which enables local officials to pass rules and regulations concerning the public health:

> Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.

Const. art. 11, § 11.

Of this constitutional grant of authority, we have said:

"This is a direct delegation of the police power as ample within its limits as that possessed by the legislature itself. It requires no legislative sanction for its exercise so long as the subject-matter is local, and the regulation reasonable and consistent with the general laws. . . ."

*Lenci v. Seattle*, 63 Wn.2d 664, 667, 388 P.2d 926 (1964) (quoting *Detamore v. Hindley*, 83 Wash. 322, 326, 145 P. 462 (1915)). Defendants contend the needle exchange program conflicts with the drug paraphernalia act and is therefore not authorized by the constitution. This argument lacks merit. First, we point out, defendants contended at oral argument that a strict needle sterilization program (in which health care workers clean IVDUs' needles and syringes, then give them back), would be legal under the statute and therefore authorized under Const. art. 11, § 11. But such a method would not remove the "conflict" defendants have alleged: if we were to accept defendants' logic (that a needle *exchange* program is a distribution of drug paraphernalia), then strict sterilization and *return* of the needles to their users is no less a "distribution".

Second, and more important, plaintiffs here are not relying on the general powers granted local officials under the state constitution. Rather, they are acting pursuant to *public health* statutes, namely RCW 70.05, which defines the powers and duties of local health officials, and RCW 70.24, the AIDS act. It is those (public health) statutes — not the criminal statute in which the drug paraphernalia act appears — with which the needle exchange program must not "conflict" to retain its constitutional imprimatur. Defendants concede if RCW 70.05 and RCW 70.24 authorize and contemplate needle exchange, then those statutes would prevail over the drug paraphernalia act. We therefore turn to an examination of the relevant statutes.

## RCW 70.05

The Legislature's broad grant of powers to local health officials is evident in RCW 70.05. The SCHD Board of Health is a "[l]ocal board of health", RCW 70.05.010(3), and as such

shall have supervision over all matters pertaining to the preservation of the life and health of the people within its jurisdiction and shall:

. . . .
(4) [p]rovide for the control and prevention of any dangerous, contagious or infectious disease within the jurisdiction of the local health department . . .[.]

RCW 70.05.060.

■ Local health officers, including plaintiff Dr. Beare (RCW 70.05.010(2)), likewise enjoy broad authority and are required to

(2) [t]ake such action as is necessary to maintain health and sanitation supervision over the territory within his jurisdiction;
(3) [c]ontrol and prevent the spread of any dangerous, contagious or infectious diseases that may occur within his jurisdiction;
(4) [i]nform the public as to the causes, nature, and prevention of disease and disability and the preservation, promotion and improvement of health within his jurisdiction;

Former RCW 70.05.070. Use of the word "shall" mandates that officials perform these duties. *See State ex rel. Nugent v. Lewis*, 93 Wn.2d 80, 82, 605 P.2d 1265 (1980).

■ ■ Because protecting and preserving the health of its citizens from disease is an important governmental function, public health statutes and the actions of local health boards implementing those statutes are liberally construed. *Snohomish Cy. Builders Ass'n v. Snohomish Health Dist.*, 8 Wn. App. 589, 595, 508 P.2d 617 (1973); *see also Brown v. County of Pierce*, 28 Wash. 345, 349, 350, 352, 68 P. 872 (1902); *State ex rel. McBride v. Superior Court*, 103 Wash. 409, 419-20, 174 P. 973 (1918). The legislatively delegated power to cities and health boards to control contagious diseases gives them extraordinary power which might be unreasonable in another context. *McBride*, 103 Wash. at 420.

■ Indeed, we have said the subject matter and expediency of public health disease prevention measures are "beyond judicial control, except as they may violate some constitutional right guaranteed to [defendants]." (Citation omitted.) *Kaul v. Chehalis*, 45 Wn.2d 616, 621, 277 P.2d 352

(1954). No rights of defendants, guaranteed by the constitution, have been invaded. Our reluctance to interfere in matters of public health is demonstrated in *Kaul*. In that case, the right of the City of Chehalis to fluoridate its water supply in order to prevent dental caries was upheld under RCW 35.23.440. The statutory authority for the City to impose this public health measure "to prevent the introduction and spread of disease" is almost identical to the statutory authority given to the SCHD to take measures necessary for "the control and prevention of any dangerous, contagious or infectious disease". RCW 35.23.440(25); RCW 70.05.060(4). Similar interpretation should result where the language and subject matter of two statutes are similar. *Green River Comm'ty College v. Higher Educ. Personnel Bd.*, 95 Wn.2d 108, 117, 622 P.2d 826 (1980), *modified on reconsideration*, 95 Wn.2d 962, 633 P.2d 1324 (1981). While we are aware tooth decay was at issue in *Kaul*, and the "disease" here is far more serious, we follow the *Kaul* decision interpreting RCW 35.23.440 and uphold the SCHD's needle exchange program as a valid measure instituted to protect public health under RCW 70.05.060 and .070, which are similar statutes.

## RCW 70.24

On March 23, 1988, the AIDS act became law within Washington State. It is codified in RCW 70.24. In the preamble to this act, the Legislature declared "that sexually transmitted diseases constitute a serious and sometimes fatal threat to the public and individual health and welfare of the people of the state." In addition, the Legislature said it intended, through the AIDS act, "to provide a program that is sufficiently flexible to meet emerging needs, [and deals] efficiently and effectively with reducing the incidence of sexually transmitted diseases". RCW 70.24.015.

The AIDS act establishes six AIDS Service Network Regions. Region I AIDS Service Network includes Spokane County. The AIDS act further directs that the largest (most populated) county within each region adopt a "plan". RCW 70.24.400(2). Spokane is such a county, and therefore pre-

pared the plan for Region I. RCW 70.24.400 enumerates, specifically, the components the plan must contain. Among the requirements are a complement of services, including "[i]ntervention strategies to reduce the incidence of HIV infection among high-risk groups, possibly including needle sterilization and methadone maintenance". RCW 70.24-.400(3)(b)(v). In addition, "[t]he use of appropriate materials may be authorized by regional AIDS service networks in the prevention or control of HIV infection." RCW 70.24-.400(12).

Defendants contend RCW 70.24.400 does not authorize needle exchange programs because *needle sterilization* does not encompass *needle exchange*. Defendants rely on a dictionary definition of "sterilization", which means "the rendering of a body or material free from living cells and esp. microorganisms usu. by killing those present (as by heat)". *Webster's Third New International Dictionary* 2238 (1971). "Exchange", on the other hand, means "the act of giving or taking one thing in return for another". *Webster's Third*, at 792.

We recently affirmed our view that the preamble or statement of intent can be crucial to interpretation of a statute. *Roy v. Everett*, 118 Wn.2d 352, 356, 823 P.2d 1084 (1992). Therefore, in keeping with the Legislature's express intent "to provide a program that is sufficiently flexible to meet emerging needs", we will explore a less rigid meaning of "sterilization" than that offered by defendants.

The parties do not dispute the "needle sterilization" language of the AIDS act permits health care workers to take intravenous drug users' dirty needles, sterilize them, and return them to the drug users. In fact there was testimony such a method has been employed, albeit with less success than the needle exchange programs. As plaintiffs point out, however, this method of sterilization exposes health care workers to the unnecessary risk of HIV infection from accidentally sticking themselves with contaminated needles. The needle exchange program eliminates that risk because the drug user drops his own used needle directly into a specially

designed safety container and the health care worker then hands him a clean needle. Plaintiffs argue to permit a dangerous means of sterilization while forbidding a safe one is an absurd result.

■ The trial court found plaintiffs' reasoning persuasive, noting needle exchange *is* a form of needle sterilization:

> When the needles are received in an exchange program, they are sterilized before disposal, so if there is a distinction between a sterilization program which is expressly authorized by the legislature and a needle exchange program such as the one that Spokane County has decided to take on, it is a distinction without a difference.

The trial court also correctly pointed out the AIDS act is a statute concerning public health and should therefore be liberally construed. *Snohomish Cy. Builders Ass'n v. Snohomish Health Dist.*, 8 Wn. App. 589, 595, 508 P.2d 617 (1973) (citing *State ex rel. McBride v. Superior Court*, 103 Wash. 409, 427, 174 P. 973 (1918)). The existing needle exchange program is the functional equivalent of "needle sterilization". We hold the program is contemplated in and acceptable under RCW 70.24.400(3)(b)(v).

Likewise, we read the second provision at issue, RCW 70-.24.400(12), which permits "[t]he use of appropriate materials . . . in the prevention or control of HIV infection" to include sterile hypodermic needles and syringes. The undisputed evidence presented to the trial court proves sterile needles and syringes are appropriate to any intervention program designed to reduce the spread of HIV infection among intravenous drug users.

Defendants, however, contend RCW 70.24.400(12) also does not authorize needle exchange programs and rely on legislative history to support their conclusion. The original AIDS bill did not contain a section similar to RCW 70.24-.400(12). An amendment to the bill provided:

> The use of appropriate materials as authorized by regional AIDS service networks in the prevention or control of HIV infection shall not be deemed a violation of RCW 69.50.412 [prohibition on distribution of drug paraphernalia].

Senate Journal, 50th Legislature (1988), at 1482. The bill was subsequently amended to read as it was finally enacted:

> The use of appropriate materials may be authorized by regional AIDS service networks in the prevention or control of HIV infection.

Senate Journal, at 1564; RCW 70.24.400(12).

██ ██ Defendants argue the "attempted legalization" of needle exchange programs, ultimately expunged from the proposed legislation, indicates a legislative intent that "appropriate materials" would not include needle and syringe exchange. In determining legislative intent, it is appropriate to consider sequential drafts. *See Bellevue Fire Fighters Local 1604 v. Bellevue*, 100 Wn.2d 748, 750-51, 675 P.2d 592 (1984), *cert. denied*, 471 U.S. 1015 (1985). Indeed, the deletion suggests the Legislature did not intend to exempt needle exchange programs from prosecution under RCW 69.50.412. However, when the Legislature rejects a proposed amendment, as it did here, we will not speculate as to the reason for the rejection. *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 63-64, 821 P.2d 18 (1991). Moreover, the language of the final legislation does *not* say such programs are unlawful and specifically permits use of "appropriate materials" as well as "needle sterilization".

Additional legislative history supports plaintiffs' viewpoint. In 1989, the Legislature passed the omnibus alcohol and controlled substances act. Section 107, as proposed, would have added a new section to the UCSA and specifically outlawed needle exchange programs. The Governor vetoed that measure, stating:

> Section 107 of the bill would prohibit and force closure of needle exchange programs, currently operating in Tacoma and Seattle which are a means to reduce HIV/AIDS transmission and encourage treatment referral. These model programs have received national attention for their innovative and credible management of the needle exchange. Both programs are operated and strictly controlled by local public health authorities and are structured to accommodate maximum research benefit. I do not condone use of illegal drugs or their taking by intravenous means. The reality is that these programs have very little potential for encouraging more illegal drug use but a

very high potential for limiting the spread of serious and deadly diseases which impact not only the persons involved but others. For both humane and economic reasons, we must do everything we can to halt the spread of AIDS.

Laws of 1989, ch. 271, p. 1342; House Journal, 51st Legislature (1989), at 3027.

██ ██ When vetoing bills, the Governor acts as part of the Legislature and his intent cannot be considered apart from the legislative intent. *State v. Brasel*, 28 Wn. App. 303, 309, 623 P.2d 696 (1981); *Shelton Hotel Co. v. Bates*, 4 Wn.2d 498, 506, 104 P.2d 478 (1940). Moreover, the submission of section 107 to the Governor suggests the Legislature believed needle exchanges were then *legal* and a new law was required to make them *illegal.* The Legislature is presumed not to pass meaningless legislation, and in enacting an amending statute, a presumption exists that a change was intended. *Johnson v. Morris*, 87 Wn.2d 922, 926, 557 P.2d 1299 (1976); *Fisher Flouring Mills Co. v. State*, 35 Wn.2d 482, 490, 213 P.2d 938 (1950).

██ At the time it passed section 107, then, the Legislature may have viewed needle exchange programs as permitted under current law. Defendants, however, point to the colloquy which occurred on the Senate floor prior to passage of the vetoed section 107:

SENATOR RASMUSSEN: "Senator Nelson, is the prohibition against giving away free needles still in this bill?"
SENATOR NELSON: "Yes, it is, Senator Rasmussen."
SENATOR RASMUSSEN: "And if the Governor chooses to veto that out, we still have the original law that makes it illegal?"
SENATOR NELSON: "That is correct, Senator Rasmussen."
SENATOR RASMUSSEN: "And maybe in his wisdom, he will leave this in as good direction for the drug bill."
SENATOR NELSON: "Let us hope so, Senator Rasmussen."

Senate Journal, 51st Legislature (1989), at 2358. Defendants contend this conversation shows the Legislature understood the "original law" (RCW 69.50.412 — the drug paraphernalia act) to ban needle exchanges. However, we can only assume the term "original law" refers to the drug paraphernalia act. Moreover, we have cautioned that a legislator's comments from the floor are not necessarily indica-

tive of legislative intent. *Wilmot v. Kaiser Aluminum & Chem. Corp., supra* at 63 (citing *North Coast Air Servs., Ltd. v. Grumman Corp.*, 111 Wn.2d 315, 326-27, 759 P.2d 405 (1988)). We note this colloquy is not truly "legislative history" with respect to the AIDS act, as it occurred in the context of another bill's passage, after the AIDS act became law.

█ Finally, we point out both the State Board of Health and Department of Health have approved needle exchange programs. The Department of Health is designated as an administrative agency under the AIDS act and an administrative and enforcement agency under the UCSA. RCW 70.24.400; RCW 69.50.303, .500. The approval by such agencies of needle exchange programs as a strategy to prevent the spread of AIDS is entitled to great weight. *Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 448, 536 P.2d 157 (1975).

The Legislature has not *explicitly* directed regional AIDS service networks to develop needle exchange programs. However, the allowances for "needle sterilization" and "the use of appropriate materials" to combat the spread of AIDS can and should be liberally construed to include needle exchange. Moreover, we are persuaded the broad powers given local health boards and officers under Const. art. 11, § 11 and RCW 70.05 authorize them to institute needle exchange programs in an effort to stop the spread of HIV and AIDS.

We affirm the trial court's decision.

DORE, C.J., and UTTER, BRACHTENBACH, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.