Honorable Michael Baumgartner Washington State Senator, District 6 PO Box 40406 Olympia, WA 98504-0406
Dear Senator Baumgartner:
By letter previously acknowledged, you have requested our opinion on the following question:
 May a state or local agency or special district contract directly with another agency for architectural or engineering services, all as defined in RCW 39.80.020, without first complying with the procurement procedures specified in RCW 39.80?
 BRIEF ANSWER
In our opinion, the answer to your question is no. Generally, a state or local agency or special district must first comply with the procurement procedures under RCW 39.80 when acquiring "professional services" as defined in RCW 39.80.020. The Interlocal Cooperation Act, RCW 39.34, does not excuse compliance with those requirements, but does allow public agencies to join together in acquiring such services. At the same time, we recognize that other specific statutes may independently authorize an agency or special district to contract directly with another agency or special district for architectural or engineering services. Precisely how such a statute would apply in light of RCW 39.80 would require consideration of its express terms.
 ANALYSIS
As you note in your opinion request, this office in 1990 responded informally to a similar but somewhat narrower question posed by then Senator Emilio Cantu. See Att'y Gen. Ltr. (Aug. 17, 1990).[1]
The question there addressed was whether a county could contract directly with another county to obtain engineering services without first complying with the procurement procedures specified in RCW 39.80. The informal opinion answered that question in the negative, concluding that the Interlocal Cooperation Act, RCW 39.34, did not relieve the county from satisfying the requirements of RCW 39.80 in contracting for the engineering services at issue.
For the reasons explained below, we believe that the 1990 informal opinion was correct and that the same conclusion applies to the question that you have posed.
1. Architectural And Engineering Services (RCW 39.80)
RCW 39.80, enacted in 1981, concerns public contracts for "architectural and engineering services" as those services are therein defined. Laws of 1981, ch. 61.[2] Initially we note, with emphasis added, that the statute itself sets forth the following declaration of legislative policy:
 The legislature hereby establishes a state policy, to the extent provided in this chapter, that governmental agencies publicly announce requirements for architectural and engineering services, and negotiate contracts for architectural and engineering services on the basis of demonstrated competence and qualification for the type of professional services required and at fair and reasonable prices.
RCW 39.80.010 (emphasis added).[3]
RCW 39.80 broadly applies to all "state agencies," "local agencies," and "special districts" as those terms are severally defined under RCW 39.80.020. See RCW 39.80.020(4) (defining "agency" as meaning both state and local agencies and special districts as those terms are further defined in subsections (1), (2), and (3)). As so defined, the term "agency" manifests legislative intent to regulate the procurement of architectural and engineering services by any entity or authority of state or local government "to theextent provided in [RCW 39.80]." RCW 39.80.010.
The statute establishes three procedural requirements relating to an agency's procurement of architectural and engineering services. AGO 1988 No. 4, at 2. These requirements may for convenience be referred to respectively as the statute's "publication," "firm selection," and "contract negotiation" procedures. All three requirements are framed in mandatory language, the word "shall" being used in each instance to signify an obligatory rather than permissive meaning. Spokane Cty. Health Dist. v. Brockett,120 Wn.2d 140, 149, 839 P.2d 324 (1992).
First, the agency shall publish in advance the agency's requirement(s) for "professional services." The agency may comply with this publication requirement in one of two ways: (1) by publishing an announcement on each occasion when "professional services" provided by a "consultant" are required, or (2) by announcing generally to the public the agency's projected requirements for any category or type of "professional services." RCW 39.80.030.
Second, in procuring the required services, the agency shall encourage "firms" engaged in the lawful practice of their profession to submit annual statements of qualifications and performance data. The agency shall evaluate such statements on file (together with those submitted by other "firms" regarding the proposed project), shall conduct discussions about the project and services with one or more "firms," and shall "select therefrom" the "firm" deemed the most highly qualified to provide the services. RCW 39.80.040.
Finally, the agency shall negotiate a contract with the most qualified "firm" at a price which the agency determines is fair and reasonable to the agency. If the agency is unable to negotiate a satisfactory contract, the agency shall select other "firms" in accordance with RCW 39.80.040 and continue in accordance with the statutory negotiation process until an agreement is reached or the process is terminated. RCW 39.80.050.
The term "professional services," as used in RCW 39.80.030, is defined coextensively with the term "architectural and engineering services" to mean "professional services rendered by any person,other than as an employee of the agency, contracting to perform activities within the scope of . . . professional practice[.]" RCW 39.80.020(5) (emphasis added).[4] Also, applicable in this context is the definition of "consultant" as used in RCW 39.80.030, which requires publication of an agency's need for "professional services" provided by a "consultant." The term "consultant" is statutorily defined as "any person providing professional services who is not an employee of the agency forwhich the services are provided." RCW 39.80.020(7) (emphasis added).
Under RCW 39.80.030, then, a public agency's compliance with the procurement procedures under RCW 39.80 is triggered by "that agency's requirement for professional services," which RCW 39.80.020 defines as architectural or engineering services to be provided by a person who is not an employee of the agency for which the services are provided. It follows that a public agency is not required to use the procurement procedures under RCW 39.80 when architectural or engineering work is to be performed for that agency by the agency's own employees. At the same time, however, RCW 39.80.020 provides no similar exception for the performance of architectural and engineering work by employees of one public agency for or on behalf of another public agency. "Where a statute provides for a stated exception, no other exceptions will be assumed by implication." Jepson v. Dep't of Labor Indus.,89 Wn.2d 394, 404, 573 P.2d 10 (1977).
Nor does any other language in RCW 39.80 suggest that public agencies may provide the architectural and engineering services to which the chapter applies. On the contrary, the statute consistently provides that the services are to be sought from "firms engaged in the lawful practice of their profession[.]" RCW 39.80.040 (emphasis added). The agency seeking to procure the services must encourage such firms to submit annual statements of qualifications, must evaluate and conduct discussions with one or more firms, and must "select therefrom" the most qualifiedfirm to provide the services. RCW 39.80.040. The agency must then negotiate a contract with the most qualified firm and, if unable to do so at a fair and reasonable price, must continue selecting and negotiating with other firms until an agreement is reached or the process is terminated. RCW 39.80.050.
Because the term "firm," as used throughout RCW 39.80, is not itself defined in the statute, the term is given its ordinary dictionary meaning as the "name, title, or style under which a company transacts business," a "partnership," or a "business unit or enterprise." State v. Chester,133 Wn.2d 15, 22, 940 P.2d 1374 (1997); Webster's Third NewInternational Dictionary 856 (2002). The term does not, in its ordinary sense, include a state or local agency or special district as those terms are defined under RCW 39.80.020(1)-(4).
For these reasons, we conclude that public agencies, as a general rule, must follow the procurement requirements under RCW 39.80 whenever such agencies require architectural or engineering work to be performed by persons other than the employees of the agency seeking the services.
2. Interlocal Cooperation Act (RCW 39.34)
The Interlocal Cooperation Act, enacted in 1967 as RCW 39.34 (see Laws of 1967, ch. 239), provides general authority for two or more public agencies to undertake joint or cooperative action under RCW 39.34.030, and to enter into interagency agreements under RCW 39.34.080 to perform any governmental service or activity which each public agency entering into the contract is authorized by law to perform. AGO1979 No. 2, at 3.
Although the Interlocal Cooperation Act has been amended periodically, it remains in all material respects both the earlier and the more general of the two statutes under consideration here. Accordingly, to the extent that RCW 39.80 might conflict with the Interlocal Cooperation Act, and the conflicting provisions could not be harmonized, RCW 39.80 would prevail. Hallauer v. SpectrumProps., Inc., 143 Wn.2d 126, 146, 18 P.3d 540 (2001) (conflicts between an earlier and a later enacted statute generally will be resolved in favor of the later statute, and a specific statute will prevail over a general statute relating to the same subject).
In our view, however, the two statutes do not conflict. This is because (with two limited exceptions discussed below) the Interlocal Cooperation Act unambiguously provides that "[n]o [interagency] agreement made pursuant to this chapter relieves any public agency of any obligation or responsibility imposed upon it by law[.]" RCW 39.34.030(5). The Interlocal Cooperation Act, therefore, does not excuse public agencies from complying with otherwise applicable legal requirements. Western Washington Univ. v. Washington Fed'nof State Emps., 58 Wn. App. 433, 440, 793 P.2d 989 (1990) (public institution's power under RCW 39.34.030(5) to enter into interagency agreements is expressly subject to its obligations and responsibilities under other statutes); AGO 2007 No. 6, at 2-3. For this reason, the general authority granted to agencies under RCW 39.34 does not excuse compliance with the mandatory procedures established by RCW 39.80 for the procurement of architectural and engineering services from persons other than an agency's own employees.
As noted, there are two statutory exceptions to the general rule under RCW 39.34.030(5) that "[n]o [interagency] agreement made pursuant to this chapter relieves any public agency of any obligation or responsibility imposed upon it by law[.]" First, RCW 39.34.030(5)(a) provides that "[t]o the extent of actual and timely performance thereof by a joint board or other legal or administrative entity created by an agreement made [under the Interlocal Cooperation Act], the performance may be offered in satisfaction of the obligation or responsibility" otherwise imposed by law. Second, RCW 39.34.030(5)(b) contemplates that a public agency or group of agencies may acquire goods or services through a bid, proposal, or contract awarded by another agency or group of agencies. Where that is the case, "any statutory obligation to provide notice for bids or proposals that applies to the public agencies involved is satisfied if the public agency or group of public agencies that awarded the bid, proposal, or contract complied with its own statutory requirements," as well as with certain additional notice requirements. RCW 39.34.030(5)(b).[5]
RCW 39.34.030(5)(a) and (b) are significant for purposes of the present analysis for another reason as well. They demonstrate that the legislature has considered and determined how public agencies are to comply with procurement procedures required by other statutes, such as RCW 39.80, and has not simply relieved them of those requirements. At the same time, we recognize that if two or more public agencies have independent and express statutory authority to provide architectural or engineering services directly to one another, then those agencies may enter into interagency agreements, under RCW 39.34, concerning the provision of such services without complying with the procurement procedures under RCW 39.80.
These principles may be illustrated with reference to the specific statutes authorizing county governments to provide their own road engineering services. RCW 36.80.010, for example, requires that each county legislative authority shall either employ a licensed civil engineer as its county road engineer or contract with another county for the services of that county's road engineer. See
RCW 36.75.010(5) (defining "county engineer"). It necessarily follows from the specific terms of the county roadwork statutes that county governments are independently and expressly authorized to enter into interagency agreements to provide road engineering services directly to one another without complying with the more generally applicable procurement procedures as set forth under RCW 39.80. Such express authority, however, applying only to county roadwork, obviously would not apply to a county government's procurement of architectural or engineering services for the construction of other facilities, for example, an office building.
We cannot, in this opinion, anticipate and address all the circumstances where a specific statute could be construed as expressly authorizing particular agencies or special districts to provide architectural or engineering services directly to one another. We note only that it would be necessary in such circumstances to consider the specific statute together with RCW 39.80, and to harmonize the two statutes to the extent possible or, in the event of a conflict, to determine which of the two statutes would control.
We trust that the foregoing will be useful to you.
ROBERT M. MCKENNA Attorney General
ALAN SMITH Assistant Attorney General
Chapter 39.80 RCW Contracts for architectural andengineering services
 39.80.010 Legislative declaration.
The legislature hereby establishes a state policy, to the extent provided in this chapter, that governmental agencies publicly announce requirements for architectural and engineering services, and negotiate contracts for architectural and engineering services on the basis of demonstrated competence and qualification for the type of professional services required and at fair and reasonable prices.
39.80.020 Definitions.
Unless the context clearly requires otherwise, the definitions in this section shall apply throughout this chapter.
 (1) "State agency" means any department, agency, commission, bureau, office, or any other entity or authority of the state government.
 (2) "Local agency" means any city and any town, county, special district, municipal corporation, agency, port district or authority, or political subdivision of any type, or any other entity or authority of local government in corporate form or otherwise.
 (3) "Special district" means a local unit of government, other than a city, town, or county, authorized by law to perform a single function or a limited number of functions, and including but not limited to, water-sewer districts, irrigation districts, fire districts, school districts, community college districts, hospital districts, transportation districts, and metropolitan municipal corporations organized under chapter 35.58 RCW.
 (4) "Agency" means both state and local agencies and special districts as defined in subsections (1), (2), and (3) of this section.
 (5) "Architectural and engineering services" or "professional services" means professional services rendered by any person, other than as an employee of the agency, contracting to perform activities within the scope of the general definition of professional practice in chapters 18.08, 18.43, or 18.96 RCW.
 (6) "Person" means any individual, organization, group, association, partnership, firm, joint venture, corporation, or any combination thereof.
 (7) "Consultant" means any person providing professional services who is not an employee of the agency for which the services are provided.
 (8) "Application" means a completed statement of qualifications together with a request to be considered for the award of one or more contracts for professional services.
 39.80.030 Agency's requirement forprofessional services — Advance publication.
Each agency shall publish in advance that agency's requirement for professional services. The announcement shall state concisely the general scope and nature of the project or work for which the services are required and the address of a representative of the agency who can provide further details. An agency may comply with this section by: (1) Publishing an announcement on each occasion when professional services provided by a consultant are required by the agency; or (2) announcing generally to the public its projected requirements for any category or type of professional services.
39.80.040 Procurement of architectural and engineeringservices — Submission of statement of qualifications and performancedata — Participation by minority and women-owned firms andveteran-owned firms.
In the procurement of architectural and engineering services, the agency shall encourage firms engaged in the lawful practice of their profession to submit annually a statement of qualifications and performance data. The agency shall evaluate current statements of qualifications and performance data on file with the agency, together with those that may be submitted by other firms regarding the proposed project, and shall conduct discussions with one or more firms regarding anticipated concepts and the relative utility of alternative methods of approach for furnishing the required services and then shall select therefrom, based upon criteria established by the agency, the firm deemed to be the most highly qualified to provide the services required for the proposed project. Such agency procedures and guidelines shall include a plan to insure that minority and women-owned firms and veteran-owned firms are afforded the maximum practicable opportunity to compete for and obtain public contracts for services. The level of participation by minority and women-owned firms and veteran-owned firms shall be consistent with their general availability within
39.80.050 Procurement of architectural and engineeringservices — Contract negotiations.
 (1) The agency shall negotiate a contract with the most qualified firm for architectural and engineering services at a price which the agency determines is fair and reasonable to the agency. In making its determination, the agency shall take into account the estimated value of the services to be rendered as well as the scope, complexity, and professional nature thereof.
 (2) If the agency is unable to negotiate a satisfactory contract with the firm selected at a price the agency determines to be fair and reasonable, negotiations with that firm shall be formally terminated and the agency shall select other firms in accordance with RCW 39.80.040 and continue in accordance with this section until an agreement is reached or the process is terminated.
 39.80.060 Procurement of architecturaland engineering services — Exception for emergencywork.
 (1) This chapter need not be complied with by any agency when the contracting authority makes a finding in accordance with this or any other applicable law that an emergency requires the immediate execution of the work involved.
 (2) Nothing in this chapter shall relieve the contracting authority from complying with applicable law limiting emergency expenditures.
 39.80.070 Contracts, modificationsreported to the office of financialmanagement.
Contracts entered into by any state agency for architectural and engineering services, and modifications thereto, shall be reported to the office of financial management on a quarterly basis, in such form as the office of financial management prescribes.
39.80.900 Savings.
Nothing in this chapter shall affect the validity or effect of any contract in existence on January 1, 1982.
39.80.910 Severability — 1981 c 61.
If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected.
[1] A copy of that informal opinion is attached for ease of reference.
[2] RCW 39.80 is also attached for ease of reference.
[3] While we look first and primarily to the language of a statute's operative sections in ascertaining legislative intent (Lacey Nursing Ctr., Inc. v. Dep't of Revenue,128 Wn.2d 40, 53, 905 P.2d 338 (1995)), a statutory preamble or statement of intent may serve as a guide, and can be crucial, to interpreting the statute's operative sections. HJS Dev.,Inc. v. Pierce Cty.,148 Wn.2d 451, 480 n. 125, 61 P.3d 1141 (2003); Towle v. Dep't ofFish Wildlife, 94 Wn. App. 196, 207, 971 P.2d 591 (1999).
[4] RCW 39.80.020(5) defines "architectural and engineering services" and "professional services" with reference to "architects" licensed under RCW 18.08, "engineers and land surveyors" licensed under RCW 18.43, and "landscape architects" licensed under RCW 18.96.
[5] Legislative history describes RCW 39.34.030(5)(b) as allowing for "piggybacking" by public agencies on the purchasing contracts of other public agencies. Laws of 2004, ch. 190 (H.B. 2615); S.B. Rep. on H.B. 2615, at 2, 58th Leg., Reg. Sess. (Wash. 2004); H.B. Rep. on H.B. 2615, at 3, 58th Leg., Reg. Sess. (Wash. 2004).