CITY OF ROANOKE RAPIDS, TOWN OF WELDON, TOWN OF ENFIELD, TOWN OF SCOTLAND NECK, TOWN OF HOBGOOD, JERRY HAMILL, BETH WORKMAN, AND HALIFAX HOUSE CORPORATION D/B/A HARVEST HOUSE, PLAINTIFFS V. C. DOUGLAS PEEDIN, JR., IN HIS CAPACITY AS CHAIRMAN AND MEMBER OF THE HALIFAX COUNTY BOARD OF HEALTH; W.K. CRAIG, MAURICE DAVIS, JACK J. EDWARDS, W.B. HUX, PAULETTE INGRAM, SUE LIVERMON, JOE McDOWELL, GEORGE C. PARRISH, ELKTON RICHARDSON, AND B.R. RICKS, IN THEIR CAPACITIES AS MEMBERS OF THE HALIFAX COUNTY BOARD OF HEALTH; AND FRANK L. BRADHAM, IN HIS CAPACITY AS THE DIRECTOR OF THE HALIFAX COUNTY HEALTH DEPARTMENT; AND HALIFAX COUNTY, DEFENDANTS

No. COA95-461

(Filed 3 December 1996)

**1. Health § 27.1 (NCI4th)— board of health—smoking rules— rule making authority**

Summary judgment should not have been granted for defendants, and should have been granted for plaintiffs, in an action for a declaratory judgment challenging the validity of the Halifax

County Smoking Control Rules (HCSCR). A board of health acts within its rule making powers when it enacts a regulation which is related to the promotion or protection of health, is reasonable in light of the health risk addressed, is not violative of any law or constitutional provision, is not discriminatory, and does not make distinctions based upon policy concerns tradition- ally reserved for legislative bodies. Assuming that N.C.G.S. § 130A-139 and other relevant sections may be read to have authorized the Board of Health to regulate smoking in public, HCSCR is invalid as representing distinctions reserved to legisla- tive policy-making in that such distinctions involve the balancing of factors other than health, such as economic hardship and dif- ficulty of enforcement.

**Am Jur 2d, Administrative Law §§ 225, 228.**

2. **Administrative Law and Procedure § 10 (NCI4th)— smok- ing rule—severability clause—ineffective**

A severability clause set out in the Halifax County Smoking Control Rules was not given effect where the rules were invalid as making distinctions reserved for the legislature. Admin- istrative rules rather than a statute or an ordinance is involved and the result of attempting to excise particular provisions would be a regulatory scheme crafted by the judicial branch of government.

**Am Jur 2d, Constitutional Law § 261.**

Appeal by plaintiffs from order and judgment entered 14 February 1995 by Judge James E. Ragan in Halifax County Superior Court. Heard in the Court of Appeals 31 January 1996.

*Womble Carlyle Sandridge & Rice, PLLC, by Keith W. Vaughan, Marilyn R. Forbes, Johnny M. Loper, Susan S. McFarlane, and Alexander P. Sands III; Hux, Livermon and Armstrong, by James S. Livermon, Jr.; and Parker and Parker, by Rom B. Parker, Jr., for plaintiff-appellants.*

*W. Turner Stephenson, III, Halifax County Attorney, for defendant-appellees.*

JOHN, Judge.

In this declaratory judgment action, plaintiffs are the City of Roanoke Rapids, the Towns of Weldon, Enfield, Hobgood, and

CITY OF ROANOKE RAPIDS v. PEEDIN

[124 N.C. App. 578 (1996)]

Scotland Neck, all located within Halifax County, and Jerry Hamill and Beth Workman, Halifax County residents and taxpayers (plaintiffs). The individual defendants are members of the Halifax County Board of Health (the Board), sued only in their capacities as members of the Board. The remaining defendants are Frank L. Bradham (Bradham), Halifax County Health Director at the time the complaint was brought, and Halifax County.

Plaintiffs appeal the trial court's grant of summary judgment to defendants, effectively dismissing plaintiffs' multiple challenges to the validity of the Board's 12 October 1993 enactment of the Halifax County Smoking Control Rules (HCSCR). We reverse the trial court and remand for entry of summary judgment in favor of plaintiffs.

For purposes of this action, plaintiffs and defendants have stipulated to the following pertinent factual and procedural information: Bradham published a Notice of Public Hearing in the *Roanoke Rapids Daily and Sunday Herald* on 30 September, 3 October, 6 October, and 10 October 1993 stating:

> The Halifax County Board of Health announces a Public Hearing will be held on Tuesday, October 12, 1993 at 7:30 p.m. in the Superior Courtroom of the Historic Courthouse in Halifax, N.C. for the purpose of hearing public opinions and recommendations regarding the proposal to adopt a county ordinance governing smoking regulations in Halifax County. The ordinance would be effective immediately upon adoption. A copy of the proposed ordinance may be viewed at the Halifax County Health Department or the Halifax County Manager's Office prior to the meeting.

> For further information or to submit written comments for consideration, please contact the Health Director at Halifax County Health Department . . . .

The Board met pursuant to this notice and conducted a public hearing. Immediately thereafter, the Board adopted the HCSCR and defendants have stipulated to their intent to enforce the HCSCR as enacted.

Relevant sections of the HCSCR are as follows:

Section II: Findings and Purpose

> WHEREAS, exposure to environmental tobacco smoke (ETS) is a hazard to the public health; and scientific and medical evidence

exists which documents this hazard including the 1992 report of the US Environmental Protection Agency on "Respiratory Health Effects of Passive Smoking: Lung Cancer and Other Disorders" which classified ETS as a Class A carcinogen and as one of the few agents known to cause cancer in man; and the 1986 report by the U.S. Surgeon General and the National Research Council demonstrating that exposure to ETS can cause lung cancer; and the declaration of June 1991 by National Institute of Occupational Safety and Health that ETS meets Occupational Safety and Health Administration (OSHA) for classification as a potential occupational carcinogen; and

WHEREAS, studies have found that breathing ETS is a cause of disease, including lung cancer, in healthy nonsmokers. At special risk are children, elderly people, individuals with impaired respiratory function, including asthmatics and those with obstructive airway disease; and

WHEREAS, the purpose of these rules are [sic] to protect and promote the public health and welfare by regulating smoking in public places, restaurants, and places of employment to minimize the public's exposure to ETS. In fulfilling this purpose, this HCSCR recognizes that where individual needs conflict, the need to breathe smoke-free air shall have priority.

NOW, THEREFORE, THE HALIFAX COUNTY BOARD OF HEALTH ADOPTS THE FOLLOWING RULES:

Section III.  Definitions

. . . .

2. "Bar" means an area comprising fifteen (15) feet or less from the perimeter of a permanent counter which is primarily devoted to serving alcoholic beverages and within which the serving of food is only incidental to the consumption of such beverages. Although a restaurant may contain a bar, the term "bar" shall not include the restaurant/dining area. The Board of Health may extend the fifteen (15) foot limitation to encompass a larger area upon a demonstration by the owner of the establishment that such an area is primarily devoted to the serving of alcoholic beverages. The area of a fifteen (15) feet perimeter rule shall not apply to an enclosed area separate from the area of a facility which meets the restaurant definition of these rules if such bar, cocktail lounge or simi-

lar room is primarily devoted to serving of alcoholic beverages and the serving of food is only incidental to the consumption of alcoholic beverages.

. . . .

6. "Dining area" means any enclosed area containing a counter or tables upon which meals are served.

. . . .

17. "Public Place" means the following enclosed areas in which the public is permitted:

. . . .

(c) Child Care Facilities;

(d) Enclosed Shopping Malls;

(e) Elevators;

(f) Grocery stores;

. . . .

(i) Public areas of retail businesses;

(j) Service lines;

(k) Public forms of transportation, including . . . buses, vans, and taxicabs;

(l) [G]alleries, libraries, and museums when open to the public;

(m) Any building . . . primarily used for exhibiting any motion picture, stage drama . . . or similar performance . . . .

(n) Enclosed sports arenas and convention halls . . . .

. . . .

18. "Restaurant" means an establishment open to the public which is engaged in the business of regularly and customarily selling food, primarily to be eaten on the premises . . . . [T]he term "restaurant" shall not include a cocktail lounge or tavern if such cocktail lounge or tavern is a "bar" as defined in paragraph (2) of this section.

. . . .

Section IV: Prohibition of Smoking in Public Places

A. Except as otherwise provided by these rules, smoking shall be prohibited in public places.

. . . .

Section V. Rules of Smoking in Places of Employment

A. Employers shall make reasonable provisions for smoke-free air in enclosed areas for nonsmoking employees. Each employer shall have the right to designate any place of employment as a nonsmoking place of employment.

. . . .

Section VI. Rules of Smoking in Restaurants

All restaurants with a seating capacity of thirty (30) or more patrons shall designate nonsmoking areas.

A. Restaurants with a seating capacity of thirty (30) or more shall have posted a conspicuous sign or signs clearly stating that a nonsmoking area is available in accordance with Section VIII of these HCSCR.

B. The nonsmoking area shall be separate and contiguous, containing at all times one-third (1/3) (33%) or more of the seating capacity of the dining area. Effective July 1, 1995, the non-smoking area shall contain one-half (1/2) (50%) or more of the seating capacity of the dining area. Effective July 1, 1996, the nonsmoking area shall contain four-fifths (4/5) (80%) or more of the seating capacity of the dining area.

C. Notwithstanding any other provision of these rules, any owner, operator, manager or other person who controls any restaurant described in these rules may declare the entire restaurant as a nonsmoking restaurant at any time.

Section VII. Regulation of Smoking in Bars and Small Restaurants

All bars and restaurants which have a seating capacity of less than thirty (30) shall post one of the following signs at every entrance notifying patrons of their smoking policy: "We Do Not Provide A Nonsmoking Section," "Nonsmoking Section Available," or "No Smoking."

Section VIII. Exclusions

A. The following areas shall not be subject to the smoking restrictions of these rules:

   1. Private Residences and Private Clubs.

   2. State and Federal facilities

B. Restaurants (or any separate room or section), hotel rooms, conference or meeting rooms, and public transportation vehicles while they are being rented for private functions.

. . . .

Prior to the 12 October 1993 meeting, the Halifax County Board of Commissioners, as well as the municipalities designated as plaintiffs herein, communicated to the Board either by letter or by resolution a desire that regulation of smoking of tobacco products be left to the elected governing bodies of the individual governmental units. Also prior to adoption of the HCSCR, the City Council of Roanoke Rapids had passed "An Ordinance Regulating Smoking in Municipal Buildings," and the Board of Town Commissioners of the Town of Weldon had adopted a policy governing smoking within its Town Hall and Police Department.

Plaintiffs filed the present declaratory judgment action 14 January 1994. Plaintiffs' complaint alleged that: (1) the Board failed to adhere to procedural notice requirements for enacting health rules; (2) in enacting the HCSCR, the Board exceeded its statutory authority; (3) any purported statutory grant of authority to enact the HCSCR was an unconstitutional delegation of legislative powers; (4) the Board's action deprived plaintiffs of property interests in the form of lost business and profits without due process of law; and (5) the express terms and provisions of the HCSCR establish discriminatory distinctions between similar businesses.

The parties also stipulated that

[p]laintiffs in this action are challenging the authority of the Halifax County Health Board to enact and/or enforce their Smoking Control Rules, and not the scientific or public health basis of those Rules. Therefore, and for the limited purposes of this action, the parties agree that plaintiffs are not challenging the scientific or public health basis of the Halifax County Board of Health's Smoking Control Rules.

CITY OF ROANOKE RAPIDS v. PEEDIN

[124 N.C. App. 578 (1996)]

Plaintiffs filed a Motion for Summary Judgment pursuant to N.C.G.S. § 1A-1, Rule 56 on 5 October 1994. At the hearing conducted 23 January 1995 on plaintiffs' motion, defendants likewise moved for summary judgment. On 16 February 1995, the trial court entered an Order and Judgment denying plaintiffs' motion and granting that of defendants. Plaintiffs filed Notice of Appeal to this Court 10 March 1995.

Prior to discussing plaintiffs' arguments, it is appropriate that we enunciate the role of this Court in resolving the instant appeal. In the words of the Court of Appeals of New York when confronting a similar matter:

> we stress that this case presents no question concerning the wisdom of the challenged regulations, . . . or the right of government in general to promulgate restrictions on the use of tobacco in public places. The degree of scientific support for the regulations and their unquestionable value in protecting those who choose not to smoke are, likewise, not pertinent, except as background information. Finally, there has been no argument made concerning the personal freedoms of smokers or their [alleged] "right" to pursue in public a habit that may inflict serious harm on others who must breathe the same air.

*Boreali v. Axelrod*, 517 N.E.2d 1350, 1353 (N.Y. 1987). The only issues before us involve the authority of the Board to enact the HCSCR and whether the regulations enacted comprised a valid exercise of such authority. "Accordingly, we address no other issue[s] in this appeal." *Id.*

[1] Plaintiffs challenge the Board's adoption of the HCSCR, *inter alia*, as being in excess of its statutory authority. The relevant statutes provide:

> (a) A county shall provide public health services.

> (b) A county shall operate a county health department . . . .

N.C.G.S. § 130A-34 (1995).

> A county board of health shall be the policy-making, rule-making and adjudicatory body for a county health department.

G.S. § 130A-35(a) (1995).

> (a) A local board of health shall have the responsibility to protect and promote the public health. The board shall have the authority to adopt rules necessary for that purpose.

(b) A local board of health may adopt a more stringent rule in an area regulated by the Commission for Health Services or the Environmental Management Commission where, in the opinion of the local board of health, a more stringent rule is required to protect the public health; otherwise, the rules of the Commission for Health Services or the rules of the Environmental Management Commission shall prevail over local board of health rules . . . .

G.S. § 130A-39 (1995).

Plaintiffs maintain the statutory rule making authority of the Board is limited to areas regulated by the Commission for Health Services or the Environmental Management Commission. A review of legislation concerning these two agencies reveals that neither have expressly been delegated the authority to regulate smoking or the use of tobacco products.

Plaintiffs also rely on the principle enunciated in Dillon's Rule:

[a] municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient, but indispensable.

*Homebuilders Assn. of Charlotte v. City of Charlotte,* 336 N.C. 37, 42, 442 S.E.2d 45, 49 (1994) (citing Dillon, *Commentaries on the Law of Municipal Corporations,* § 237 (5th ed. 1911)).

Defendants respond that broad rule making authority to preserve public health is necessary, citing the rationale of the court in *Cookie's Diner, Inc. v. Columbus Bd. of Health,* 640 N.E.2d 1231 (Ohio Mun. Ct. 1994):

"the nature of the problem" (the problem being the protection of public heath) is such that it is impossible to lay down precise standards to define what unheard-of or newly discovered public health hazards or diseases might be on the next horizon . . . .

*Id.* at 1236. Thus, "[r]ule-making bodies must be allowed a wide discretion . . . ." *Id.* (citation omitted). Defendants also maintain the application of Dillon's Rule has been abolished with respect to municipal governments, citing the *Homebuilders* decision of our Supreme Court. *See, Homebuilders Assn.,* 336 N.C. at 44, 442 S.E.2d at 50.

## CITY OF ROANOKE RAPIDS v. PEEDIN

[124 N.C. App. 578 (1996)]

We note in passing at this juncture that our General Assembly has enacted "An Act to Regulate Smoking in Public Places and to Establish Standards for Local Governments Electing to Regulate Smoking." 1993 N.C. Sess. Laws ch. 367; N.C.G.S. §§ 143-595 *et seq.* (1996). This legislation specifically prohibits local governments after 15 October 1993 from enacting regulations more stringent than those contained within the Act. G.S. § 143-601. Because the HCSCR were passed prior to 15 October 1993, we are not called upon to determine whether the Board's action was violative of this statute.

In any event, it is unnecessary for purposes of our opinion to resolve the parties' dispute as to whether the statutory sections set out above empowered the Board to adopt the HCSCR. Assuming *arguendo* the Board was accorded statutory authority to establish rules regulating public smoking, we hold enactment of the HCSCR exceeded the general limitations imposed upon rule making powers of boards of health.

Our courts have not previously specifically enunciated restrictions on the legislative grant of rule making authority to boards of health. However, based upon previous holdings in related areas, as well as the holdings of courts in other jurisdictions, we conclude a board of health acts within its rule making powers when it enacts a regulation which (1) is related to the promotion or protection of health, (2) is reasonable in light of the health risk addressed, (3) is not violative of any law or constitutional provision, (4) is not discriminatory, and (5) does not make distinctions based upon policy concerns traditionally reserved for legislative bodies. *See, e.g., State v. Curtis*, 230 N.C. 169, 171, 52 S.E.2d 364, 365 (1949) (health board not delegated power to pass laws); *Clark's Charlotte, Inc. v. Hunter*, 261 N.C. 222, 229, 134 S.E.2d 364, 369 (1964) (enactment of Sunday regulations generally legitimate exercise of police power and "will be upheld, provided the classification is founded upon reasonable distinctions, affects all persons similarly situated or engaged in the same business without discrimination, and has some reasonable relation to the public peace, welfare, and safety"); *see also Cookie's Diner*, 640 N.E.2d at 1236 (health boards' "regulations designed to promote the general policy of the General Assembly to protect the public health, and [which] are reasonable, nondiscriminatory, and not contrary to constitutional rights and to legislation, . . . would be valid"); *Weber v. Board of Health*, 74 N.E.2d 331, 336 (Ohio 1947) ("[administrative] bodies must not legislate or make rules which are unreasonable, discriminatory or contrary to constitutional rights"); *Boreali*, 517 N.E.2d

at 1353 ("Even under the broadest and most open-ended of statutory mandates, an administrative agency may not use its authority as a license to correct whatever societal evils it perceives."); and *Matter of Council for Owner Occupied Housing v. Abrams*, 511 N.Y.S.2d 966, 969 (N.Y. App. Div. 1987) ("Administrative officers may not act 'solely on their own ideas of sound public policy, no matter how excellent such ideas might be.' "); *see also generally* 39A C.J.S. Health & Environment 14 (1976).

Whatever the statutory authority of the Board to enact regulations governing public smoking, we believe the HCSCR to be invalid as representing distinctions reserved to legislative policy-making, and thus do not discuss the remaining factors. *See Cookie's Diner*, 640 N.E.2d at 1240-41 (smoking regulations invalid which discriminated among restaurants and businesses on bases of enforceability and economics). Our decision

> is particularly compelling here, where the focus is on administratively created exemptions rather than on rules that promote the legislatively expressed [public health] goals, since exemptions ordinarily run counter to such goals and, consequently, cannot be justified as simple implementations of legislative values.

*Boreali*, 517 N.E.2d at 1355.

One stated purpose of the HCSCR is to "protect and promote the public welfare by regulating smoking in public places, restaurants, and places of employment to minimize the public's exposure to ETS [environmental tobacco smoke]." For this purpose to be achieved in a manner which does not infringe upon the General Assembly's legislative power to make policy-based distinctions, the HCSCR must, for example, treat similarly situated patrons and employees of all restaurants equally. *Compare Boreali*, 517 N.E.2d at 1355, *with Fagan v. Axelrod*, 550 N.Y.S.2d 552, 559 (N.Y. Sup. Ct., Albany County 1990) (substantially similar regulatory scheme struck down in former case when enacted by executive agency, but upheld in latter when passed by legislature which court stated had authority to accommodate competing health, economic and social concerns). To act otherwise would expose some employees and patrons to a health risk that other similarly situated employees and patrons do not face. Without dispute, such distinctions involve the balancing of factors other than health.

Sections VI and VII of the HCSCR differentiate between the regulation of smoking in restaurants seating fewer than thirty patrons

(small restaurants) and those seating thirty or more patrons (large restaurants). Large restaurants must provide a nonsmoking area that will eventually comprise 80% of the restaurant's seating capacity. Section VII, on the other hand, allows small restaurants to establish a nonsmoking area, or to post a sign indicating the restaurant is entirely smoking or entirely nonsmoking. Thus, workers and patrons may be exposed to ETS in some restaurants, while being protected from it in others.

Moreover, greater protection from ETS is afforded under Section IV to those businesses defined as "public places" in Section III (17) than to those places which are excluded from the rules in Section VIII (B) (restaurants as well as conference and meeting rooms).

In addition, "bars" as defined in the HCSCR are neither included within the definition of "public place" nor "restaurant," and are regulated solely with small restaurants under the provisions of Section VII. Bars are thus allowed to provide no non-smoking section whatsoever.

Finally, the Board under Section III (2) may extend the fifteen foot spatial requirement defining a "bar" so that unrestricted smoking is permitted in a retail business "primarily devoted to the serving of alcoholic beverages," whatever its size or seating capacity.

Having designated as the purpose of the HCSCR the protection and promotion of the public health and welfare by minimizing the public's exposure to environmental tobacco smoke, and having emphasized "that where individual needs conflict, the need to breathe smoke-free air shall have priority," the Board nonetheless created numerous exceptions within the HCSCR. Neither the HCSCR nor the record contain any explanation as to why these distinctions exist, nor indeed do we discern any health-related explanation for such disparate treatment in defendants' appellate brief. Such classifications—for example, that allowing unconfined smoking so long as the primary focus of a business is the dispensation of alcoholic beverages—cannot be said to have their "foundation in considerations of public health," *Boreali*, 517 N.E.2d at 1355, but rather in concerns regarding economic hardship and difficulty of enforcement.

Assuming *arguendo*, as we have, that G.S. § 130A-139 and other relevant sections may be read to have authorized the Board to regulate smoking in public, the statutes cannot be held to permit the Board to consider factors other than health in promulgating its rules. While a legislative body arguably may direct that distinctions be

based on factors other than public health when authorizing the promulgation of rules by health boards, such factors may not be considered *sua sponte. See Adams v. Dept. of N.E.R. and Everett v. Dept. of N.E.R.*, 295 N.C. 683, 698, 249 S.E.2d 402, 411 (1978) ("important policy choices" should be made by elected officials); *see also Boreali*, 517 N.E.2d at 1356 ("Manifestly, it is the province of the people's elected representatives, rather than appointed administrators, to resolve difficult social problems by making choices among competing ends.").

In two recent cases invalidating smoking control regulations, courts in other jurisdictions have found that the health board impermissibly considered non-health related factors in crafting the regulations. *See Boreali*, 517 N.E.2d at 1355 (enacting anti-smoking regulations "laden with exceptions based solely upon economic and social concerns" impinged upon legislative function to strike proper balance among health concerns, costs, and privacy interests), and *Cookie's Diner* 640 N.E.2d at 1241-42 (allowing bars to choose between "smoking" and "nonsmoking" because of difficulty in enforcing regulations, and permitting some businesses to obtain variances because of practical difficulties or other special conditions, "represent[s] classic public policymaking—the balancing of competing interests to arrive at a result that will be accepted by the majority").

At the hearing below, plaintiffs bore the burden of demonstrating the invalidity of the HCSCR. 39 Am. Jur. 2d Health 21 at 359 (1968); *see also Miles City v. Board of Health*, 102 P. 696, 698 (Mont. 1909). Plaintiffs having shown the HCSCR were invalid as providing exceptions unattributable to health-related factors, the burden shifted to defendants to meet plaintiffs' showing. *First Citizens Bank v. Holland*, 51 N.C. App. 529, 531-32, 277 S.E.2d 108, 110 (1981). None of the materials offered by defendants raised an issue of fact as to any health-related basis for the disparate treatment of similarly situated commercial establishments. Allowance of defendants' summary judgment motion was thus improper and summary judgment should have been entered in favor of plaintiffs.

[2] Prior to concluding, however, we consider the effect of the severability clause set out in Section XIV of the HCSCR which provides:

　　If any portion of this HCSCR or the application thereof shall be held invalid, such invalidity shall not affect the other provisions

of this HCSCR and, to this end, the provisions of this HCSCR are declared to be severable.

It is well-established that when a provision of a statute or ordinance is held to be invalid, the constitutional provisions will be given effect if separable from the unconstitutional provision and if the legislative intent is for the remaining provisions to stand. *Commissioners v. Boring*, 175 N.C. 105, 111, 95 S.E. 43, 46 (1918). We observe, however, that neither a statute nor an ordinance is involved herein, but rather administrative rules.

Further,

[i]t would be pragmatically impossible, as well as jurisprudentially unsound, for us to attempt to identify and excise particular provisions while leaving the remainder of the [administrative agency's] antismoking code intact . . . .

*Boreali,* 517 N.E.2d at 1356-57. The result would itself constitute a regulatory scheme crafted by "the judicial branch of government [acting] as part of the legislative branch of government." *Cookie's Diner,* 640 N.E.2d at 1244. Like the New York and Ohio courts, we therefore decline under the circumstances *sub judice* to give effect to the severability clause in the HCSCR. As we have thus determined the HCSCR invalid, it is unnecessary to consider plaintiffs' remaining arguments.

In sum, the trial court's grant of defendants' summary judgment motion is reversed, and this case remanded for entry of summary judgment in favor of plaintiffs.

Reversed and remanded with directions.

Judges JOHNSON and LEWIS concur.