James R. **LINDSEY** and Sun Cha Lindsey, and their marital community, et al., Plaintiffs,

v.

**TACOMA–PIERCE COUNTY HEALTH DEPARTMENT, a combined City–County Health Department, et al., Defendants.**

No. C97–5076 RJB.

United States District Court, W.D. Washington.

Nov. 6, 1997.

Bradley S. Keller, Byrnes & Keller, Seattle, WA, for plaintiffs.

Clifford D. Allo, Tacoma–Pierce County Health Dept., Tacoma, WA, for defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

BRYAN, District Judge.

This matter comes before the court on Defendants' First Motions for Partial Summary Judgment (Dkt.# 34), and Plaintiff's Motion for Summary Judgment on Federal Preemption, State Preemption and Agency's

Exceeding the Scope of its Delegated Authority (Dkt.# 36). The court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

## SUMMARY JUDGMENT STANDARD

The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630 (9th Cir.1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., the preponderance of the evidence in most civil cases. *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505; *T.W. Elec. Service Inc.,* 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Service,* 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

## FACTUAL BACKGROUND

The plaintiffs are the owners of five convenience stores located throughout Pierce County, Washington. They hold valid cigarette retailers' licences issued by the State of Washington. Prior to March 1, 1997, they displayed cigarette advertising on the outside and the inside of their stores. The plaintiffs received financial compensation tied to the volume of cigarette sales, the display of advertisements, and the participation in promotional programs.

The defendants comprise the Tacoma–Pierce County Health Department, its Board of Health, board members, the City of Tacoma and individual city and county officials (hereinafter referred to collectively as "the Board of Health"). The Board of Health is empowered by law to enact and enforce local rules and regulations "to preserve, promote, and improve the public health" of the City of Tacoma and greater Pierce County. RCW 70.05.060, .60(3).

Incidental to those duties, the defendants held two hearings regarding the rising incidence of cigarette smoking by children since the initiation of the so-called "Joe Camel" advertising campaign. In response to those hearings, on December 4, 1996, the Board of Health enacted the "Truth in Outdoor Tobacco Advertising Regulation" (hereinafter referred to as "TOTAR"), Resolution No. 96–1997, effective March 1, 1997. Attachment to Defendants' Brief on First Motions for Summary Judgment. TOTAR contains a detailed statement of "Authority" (*Id.,* Sec. 1, 1.1–1.3) and specific "Findings" regarding the significant threat to the health of children and adults resulting from the use of tobacco products. *Id.,* Sec. 2, 2.1–2.7. TOTAR places certain limitations on outdoor advertising of tobacco and tobacco products as follows:

3 Limitations

3.1 Except as stated below, outdoor advertising of tobacco and tobacco products is prohibited within the jurisdiction of the Tacoma–Pierce County Health Department Board of Health.

3.1.1 For the purposes of the prohibition, "outdoor advertising" means advertising that can be seen from the street.

3.1.2 Advertising in sports stadiums or other enclosed outdoor spaces is not within this ban if it cannot be seen from outside the enclosure.

3.13 Advertising within buildings or other enclosures shall be considered outdoor advertising if it can be seen from outside the building or enclosure through windows, doors, or other apertures or if it can be seen on television.

3.2 Except as provided below, licensed retailers of tobacco and tobacco products may post price and availability information outside their premises in tombstone formats.

3.2.1 For the purposes of this prohibition, a tombstone format means a format in which truthful, factual information appears in clear, plain black type on a white field without adornment and unaccompanied by color, opinion, artwork, or logos.

3.2.2 No tombstone advertising shall be visible from a school, school bus stop, bus stop, or sidewalk regularly sued by minors to get to school.

3.2.3 No tombstone advertising shall be placed within one thousand (1,000) feet of a school, playground, or public park.

3.3 Advertising that is within premises licensed to sell tobacco and tobacco products but not visible from the street may be in any format and present any information or images not otherwise prohibited by law.

*Id.* TOTAR also includes monitoring, appeal procedures, and penalties. *Id.* Sec. 4.4, 4.4.1–4.5.

After the effective date of the enactment, the plaintiffs allege that they were forced to remove all of their exterior advertisements and much of their interior advertising and promotional materials. They claim that they have suffered significant monetary losses.

The defendants have moved for summary judgment on the plaintiffs' first, fourth and fifth claims. Essentially, the defendants argue the TOTAR is within the legislative authority granted to the Board of Health by state law and is not preempted by federal and/or state law. The plaintiffs' cross motion is for a determination that TOTAR is preempted by federal and/or state law, that the Board of Health acted beyond its dele-

gated powers, and that TOTAR is therefore invalid.

## ISSUES

The issues raised in the motions are:

1. Whether TOTAR is within the legislative authority granted to the Board of Health by RCW 70.05.060?

2. Whether TOTAR is preempted by the Federal Cigarette Labeling and Advertising Act of 1965 ("Federal Act"), 15 U.S.C. § 1331 *et seq*?

3. Whether TOTAR is preempted by Washington's Tobacco—Access to Minors Act ("State Act"), RCW 70.155 *et seq*?

## DISCUSSION

*1. Whether TOTAR is within the legislative authority granted to the Board of Health by RCW 70.05.060?*

■ In the plaintiffs' fourth claim for relief, they allege that the Board of Health had no authority to enact TOTAR. The defendants seek summary dismissal of this claim, arguing that they acted well within their statutory authority as expressed, and liberally construed, in RCW 70.05.060. The defendants contend that their jurisdiction includes measures aimed to prevent nicotine addiction in minors, and that controlling advertising accessible to minors is a reasonable means of protecting them from the deleterious impact nicotine has on their health. Alternatively, the defendants urge the court to abstain pursuant to *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), if the court concludes that they have exceeded their statutory authority. The defendants argue that a ruling in favor of the plaintiffs on this issue has the effect of determining that TOTAR is unconstitutional, and that determination is more properly made by the Washington state courts.

The plaintiffs argue that the Board of Health exceeded its legislative authority and engaged in impermissible legislation and decision making which, under the doctrine of separation of powers, is reserved for the Legislature. The plaintiffs also argue that the Board of Health's regulation can be

found to be in excess of its authority because TOTAR has the effect of extending or conflicting with the Board's enabling statute; RCW 70.05.060. The plaintiffs distinguish the decision of *Spokane County Health Dist. v. Brockett,* 120 Wash.2d 140, 839 P.2d 324 (1992), relied on by the defendants, on many grounds, particularly that the case dealt with the disease of AIDS, which the plaintiffs characterize as a far different health concern than the prevention of nicotine addiction. The plaintiffs cite authorities in other jurisdictions which support their position; *City of Roanoke Rapids v. Peedin,* 124 N.C.App. 578, 478 S.E.2d 528 (1996) and *Boreali v. Axelrod,* 71 N.Y.2d 1, 523 N.Y.S.2d 464, 517 N.E.2d 1350 (1987). They seek summary judgment on their fourth claim based on excess exercise of legislative authority.

The Washington State Constitution provides that "Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." Const. art. 11, § 11. This constitutional grant of authority has been interpreted as "a direct delegation of the police power as ample within its limits as that possessed by the legislature itself. It requires no legislative sanction for its exercise so long as the subject-matter is local, and the regulation reasonable and consistent with the general laws...." *Brockett,* 120 Wash.2d at 147, 839 P.2d 324 (quoting *Lenci v. Seattle,* 63 Wash.2d 664, 667, 388 P.2d 926 (1964) (internal quotations omitted)).

■ Legislative functions cannot be delegated to an administrative body but the Legislature may delegate administrative power. *Hi–Starr, Inc. v. Washington State Liquor Control Bd.,* 106 Wash.2d 455, 458, 722 P.2d 808 (1986) (quoting *Keeting v. PUD 1,* 49 Wash.2d 761, 767, 306 P.2d 762 (1957)). Nondelegable powers include the power to enact, suspend, and repeal laws, and the power to declare general public policy. *Diversified Investment v. DSHS,* 113 Wash.2d 19, 24, 775 P.2d 947 (1989) (citation omitted). Delegation of administrative power is justified and constitutional when it is demonstrated "(1) that the legislature has provided standards or guidelines which define in general terms what is to be done and the instrumentality or administrative body which is to

accomplish it; and (2) that procedural safeguards exist to control arbitrary administrative action and any administrative abuse of discretionary power." *Hi–Starr, Inc.,* 106 Wash.2d at 458, 722 P.2d 808 (quoting *Barry & Barry, Inc. v. State Department of Motor Vehicles,* 81 Wash.2d 155, 159, 500 P.2d 540 (1972)); *see also Diversified Investment,* 113 Wash.2d at 25, 775 P.2d 947. In *Hi–Starr, Inc.,* the court affirmed the administrative revocation of Hi Starr's class H liquor license because Hi Starr did not report sufficient gross food sales. 106 Wash.2d at 466, 722 P.2d 808. The court found that although the Washington State Liquor Control Board's powers were broad under RCW 66.08.050, the Board's power was justified and constitutional. *Id.* 106 Wash.2d at 459, 722 P.2d 808.

■ The Legislature may also delegate to administrative officers or boards the power to determine some fact or state of things upon which the application of the law is made to depend provided the law enunciates standards by which those officers or boards will be guided. *Washington Water Power Co. v. Washington State Human Rights Comm'n,* 91 Wash.2d 62, 586 P.2d 1149 (1978). Thus, constitutionally permissible delegations of administrative power concerning the application of the law may take the form of interstitial administrative action or contingent legislation. *Diversified Investment,* 113 Wash.2d at 25, 775 P.2d 947 (citations omitted). Regulations will not be struck down unless " 'compelling reasons are presented sufficient to show the scheme is in conflict with the intent and purpose of the legislation.' " *Hi–Starr, Inc.,* 106 Wash.2d at 459, 722 P.2d 808.

RCW 70.05.005 transfers to the department of health, the powers and duties of the department of social and health services. RCW 70.05.020 and .030 requires that every city and county organize a local board of health. The powers and duties of the local board of health is set forth in the enabling statute, RCW 70.05.060, and in pertinent part provides as follows:

Each local board of health shall have supervision over all matters pertaining to the preservation of the life and health of the people within its jurisdiction and shall:

(1) Enforce through the local health officer or the administrative officer appointed un-

der RCW 70.05.040, if any, the public health statutes of the state and rules promulgated by the state board of health and the secretary of health;

(2) Supervise the maintenance of all health and sanitary measures for the protection of the public health within its jurisdiction;

(3) Enact such local rules and regulations as are necessary in order to preserve, promote and improve the public health and provide for the enforcement thereof;

(4) Provide for the control and prevention of any dangerous, contagious or infectious disease within the jurisdiction of the local health department;

(5) Provide for the prevention, control and abatement of nuisances detrimental to the public health; ...

Use of the word "shall" mandates that officials perform these duties. *State ex rel. Nugent v. Lewis,* 93 Wash.2d 80, 82, 605 P.2d 1265 (1980).

■ As argued by the defendants, public health statutes and the actions of local health boards implementing those statutes are liberally construed because protecting and preserving the health of its citizens from disease is an important governmental function. *Brockett,* 120 Wash.2d at 149, 839 P.2d 324. *See also Snohomish Cy. Builders Ass'n v. Snohomish Health Dist.,* 8 Wash.App. 589, 595, 508 P.2d 617 (1973). In *Brockett,* the Washington Supreme Court upheld the Spokane Health District's program for a needle exchange to help reduce the spread of HIV, and found that the constitutional grant of authority to local boards of health to make and enforce rules and regulations regarding public health may prevail over other statutes, as long as the local regulations do not conflict with other *public health* laws. *Brockett,* 120 Wash.2d at 147–48, 839 P.2d 324 (citing Const. art. 11, § 11; *Lenci v. Seattle,* 63 Wash.2d 664, 667, 388 P.2d 926 (1964)). The court also stated

The legislatively delegated power to cities and health boards to control contagious diseases gives them extraordinary power which might be unreasonable in another context. Indeed, we have said that the subject matter and expediency of public health disease prevention measures are beyond judicial control, except as they may violate some constitutional right guaranteed to the plaintiffs.

*Brockett,* 120 Wash.2d at 149—50, 839 P.2d 324 (internal quotations and citations omitted). *See also Kaul v. Chehalis,* 45 Wash.2d 616, 277 P.2d 352 (1954) (holding that the City of Chehalis had the right to fluoridate its water supply to prevent dental caries).

Plaintiffs' citations to cases from other jurisdictions are not informative or persuasive on this issue. Those cases deal with smoking in public places in North Carolina and New York. Not only are those cases factually distinguishable, they do not pertain to the laws of the State of Washington. The court disagrees with the plaintiffs' argument that the disease of AIDS, the subject of the *Brockett* decision, is significantly different from nicotine addiction in children. Although there are many differences, it is undisputed that nicotine addiction can lead to serious long term health consequences including lung cancer, heart disease, and death, especially if that addiction started in childhood. The court cannot speculate why the Washington Legislature has not enacted laws or regulations restricting the advertisement and promotion of tobacco products. The defendants' regulations stated in TOTAR appear to comply with the standards, and are reasonably related to their delegated authority, as set forth in RCW 70.05.060. The appeals procedure in Sec. 4.4 provide adequate procedural safeguards to counter arbitrary abuse of administrative power. No compelling reason has been presented by the plaintiffs to show that TOTAR's scheme is in conflict with the intent and purpose of the State Act.

For these reasons and the reasons argued by the defendants, the defendants' motion for partial summary judgment on this issue should be granted, and the plaintiffs' motion should be denied. Plaintiffs' fourth claim should be dismissed. Because of this ruling, it is not necessary for the court to address the defendants' alternative argument of abstention.

2. *Whether TOTAR is preempted by the Federal Cigarette Labeling and Advertising Act of 1965 ("Federal Act"), 15 U.S.C. § 1331 et seq?*

The plaintiffs' first cause of action claims that TOTAR is preempted by Section 5(b) of

the Federal Cigarette Labeling and Advertising Act (hereinafter referred to as the "Federal Act"), codified at 15 U.S.C. § 1334(b). The defendants argue against preemption. They claim that when the Federal Act is read narrowly and fairly, it is clear that the Board of Health, in TOTAR, did not require tobacco companies to take affirmative action, nor did it prohibit cigarette advertising or promotion by such companies. The defendants also argue that the Federal Act does not limit outdoor advertising. The defendants seek dismissal of the plaintiffs' first cause of action.

The plaintiffs argue that the Supremacy Clause of the U.S. Constitution reserves to Congress the power to regulate cigarette advertising, and that any state law (here TOTAR) which conflicts with federal law (here the Federal Act) is preempted. The plaintiffs argue that TOTAR is clearly a requirement or a prohibition based on smoking and health and is preempted by the Federal Act. The plaintiffs seek summary judgment on their first claim based on federal preemption of TOTAR.

## A. Preemption Principles

In pertinent part, Article VI of the U.S. Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. This clause has been interpreted to mean that any state law that conflicts with federal law is "without effect." *M'Culloch v. Maryland*, 17 U.S. 316, 427, 4 Wheat. 316, 4 L.Ed. 579 (1819). In modern times, this doctrine is known as federal preemption and may be invoked in several ways. Congressional intent to preempt state law may be stated explicitly in the language of the statute. Congressional intent to preempt may be found implicitly in several ways: 1) where the state law actually conflicts with the federal law, such as when "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); 2) where a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941); 3) where

"federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (citations omitted); *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 605, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991); 4) where "the Act of Congress ... touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or if the goals "sought to be obtained" and the "obligations imposed" reveal a purpose to preclude state authority. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Courts are reluctant to infer pre-emption. *Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608.

The health and safety of a state's citizens "are primarily, and historically, matters of local concern." *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 67 (quoting *Medtronic v. Lohr*, 518 U.S. 470, 475, 116 S.Ct. 2240, 2245, 135 L.Ed.2d 700 (1996)). Thus, "the States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort and quiet of all persons." *Id.* (internal quotation marks, citations, and alterations omitted). There is a presumption that "federal law does not supersede a state's historic police power unless that [is] the clear and manifest purpose of Congress." *Id.* 122 F.3d at 68 (quoting *Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608.) *See also Hillsborough County v. Automated Medical Labs.*, 471 U.S. 707, 715, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) (noting "presumption that state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause"). This presumption includes the "health and safety" presumption in both express and implied preemption analyses. *Id. See Greenwood Trust Co. v. Commonwealth*, 971 F.2d 818, 823 (1st Cir.1992) ("Even federal statutes that contain express preemption clauses must be viewed through the prism of the [the] assumption.").

Application of these principles is not an easy task. The preemption analysis does

not lend itself to "a rigid formula or rule that can be used as a universal pattern to determine the meaning and purpose of every act of Congress." *Philip Morris,* 122 F.3d 58, 69 (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). Therefore, the court must review the relevant language of the Federal Act, with an eye toward the congressional intent and relevant case law to determine if Congress intended to preempt local regulations such as TOTAR. *Id.*

### B. The Federal Act

■ In *Cipollone,* the U.S. Supreme Court concluded that the preemptive scope of the Federal Act was expressly stated in 15 U.S.C. § 1334(b), and that courts must *"fairly but—in light of the strong presumption against pre-emption—narrowly construe the precise language of Sec. 5(b) [15 U.S.C. § 1334(b) ] ..." Id.* 505 U.S. at 523, 112 S.Ct. 2608 (emphasis added).

15 U.S.C. § 1334(b) states:

No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

The policy and purpose of the Federal Cigarette Labeling and Advertising Act, is stated at 15 U.S.C. § 1331 as follows:

It is the policy of the Congress, and the purpose of this chapter, to *establish a comprehensive Federal program to deal with cigarette labeling and advertising* with respect to any relationship between smoking and health, whereby—

*(1) the public may be adequately informed about any adverse health effects of cigarette smoking by inclusion of warning notices on each package of cigarettes and in each advertisement of cigarettes; and*

*(2) commerce* and the national economy may be (A) *protected to the maximum extent* consistent with this declared policy and (B) *not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.*

(Emphasis added). Other provisions of the Act carry out these policies and purposes. The Act includes several versions of the required warning label language [§ 1333(a)(1) ]; requirements for placement and format of the warning label on cigarette packages, advertisements, and outdoor billboards [§ 1333(a)(2) and (3); (b) ]; and requirements for rotation of the warning label statement and the application process for approval of a rotation plan [§ 1333(c) ]. While § 1334(b), when read broadly, seems to indicate a congressional intent to preempt all state regulation of advertisement based on smoking and health, the narrow reading required by the rule of *Cipollone* leads to a different conclusion. The Federal Act only preempts any state law pertaining to the language, format, and placement of cigarette warnings on cigarette packages, advertising, and outdoor billboards based on smoking and health.

### C. Application of Preemption Principles to TOTAR

■ Clearly, TOTAR pertains to matters of the health and safety of the citizens of Pierce County, Washington, and therefore, the presumption that federal law will not supersede it applies to TOTAR. It is also clear that TOTAR does not actually conflict with the Federal Act or stand as an obstacle to it, and that federal law does not so thoroughly occupy or dominate the tobacco advertising field as to leave no room for state supplementation. The remaining question is whether 15 U.S.C. § 1334(b) states explicitly a congressional intent to preempt regulations such as TOTAR.

Under the preemption test set forth in *Cipollone,* the Federal Act does not preempt TOTAR. The Board of Health's regulations restricts the *location* of the advertisements and does not impact the *content* of those advertisements as to the warning information. Even Section 3.2.1, which dictates the format for tombstone advertisements, does not prescribe the content of those advertisements. TOTAR simply requires that tombstone advertisements state "truthful, factual information ... in clear, plain black type on a white field without adornment and unaccompanied by color, opinion, artwork, or lo-

gos." Resolution 96–1997, *infra* p. 1216–17. TOTAR does not impose an affirmative duty, relieve a burden, or limit the ability of cigarette manufacturers to advertise generally. TOTAR does not conflict with the Federal Act. Rather, TOTAR only supplements it by restricting the location and manner of outdoor advertisements.

This interpretation is consistent with *Penn Advertising v. Mayor of Baltimore*, 63 F.3d 1318, 1320–21, 1324 (4th Cir.1995), *vacated and remanded on other grounds*, 518 U.S. 1030, 116 S.Ct. 2575, 135 L.Ed.2d 1090 (1996), *modified by* 101 F.3d 332 (4th Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1569, 137 L.Ed.2d 715 (1997). There, the Fourth Circuit upheld Baltimore's Ordinance 307 which "prohibits the placement of any sign that 'advertises cigarettes in a publicly visible location,' *i.e.* on 'outdoor billboards, sides of building[s], and free standing signboards.'" 63 F.3d at 1321 (emphasis in original). The ordinance made certain exceptions not relevant here. The court held that Ordinance 307 was not preempted by the Federal Act because the ordinance "does not address the *content* of such advertisements," "does not limit the ability of cigarette manufacturers to advertise generally in the media." *Id.* at 1324 (emphasis in original). In *Philip Morris, supra*, the First Circuit upheld a Massachusetts statute requiring tobacco products' manufacturers to disclose additives and nicotine-yield ratings of their products to a state agency. 122 F.3d at 87. The court's decision contains an in an excellent discussion of the preemptive effect of the Federal Act and the applicable case law. The court also pointed how the Massachusetts law differs from the Federal Act.

> [T]he [state act] does not require alterations in the industry's advertising and promotional activities, or impose any duty to disclose information through those channels. The state law's obligations are neither triggered by advertising decisions, nor could they be fulfilled by altering cigarette labels or advertisements. The law does not direct the manufacturers to employ any mass-marketing or other techniques even remotely resembling advertising and promotion. In the end, we think that had Congress intended to prohibit the public disclosure of smoking and health information that, at some point, the tobacco-product manufacturers had disgorged under state law, the limited phrase "with respect to advertising and promotion" would be an odd vehicle to reach this end. Thus, we find the explicit preemption language and legislative history insufficient to "clear[ly] and manifest[ly]" overcome the presumption against preemption of a state's traditional powers to legislate for the health and safety of its citizens. *Mortier*, 501 U.S. at 606, 111 S.Ct. at 2482; see *Dillingham Constr.*, 519 U.S. at ——, 117 S.Ct. at 842 ("We could not hold pre-empted a state law in an area of traditional state regulation based on so tenuous a relation without doing grave violence to our presumption that Congress intended nothing of the sort.") (construing express preemption language).

*Id.* 122 F.3d at 77 (footnote omitted). *See also Mangini v. R.J. Reynolds Tobacco Co.*, 7 Cal.4th 1057, 31 Cal.Rptr.2d 358, 875 P.2d 73, 78 (1994) (holding that a suit to enjoin the "Old Joe Camel" cigarette advertising campaign targeting minors pursuant to California state law is not preempted by the Federal Act).

The defendants also cite *Packer Corporation v. State of Utah*, 285 U.S. 105, 52 S.Ct. 273, 76 L.Ed. 643 (1932), a pre-Federal Act case. In that case, the U.S. Supreme Court upheld the conviction of Packer Corporation for violating Utah's ban on tobacco advertisements on billboards, and found that outdoor advertisements is a matter of state law. The court observed:

> Moreover, as the state court has shown, there is a difference which justifies the classification between display advertising and that in periodicals or newspapers: Billboards, street car signs, and placards and such are in a class by themselves. They are wholly intrastate, and the restrictions apply without discrimination to all in the same class. Advertisements of this sort are constantly before the eyes of observers on the streets and in street cars to be seen without the exercise of choice or volition on their part. Other forms of advertising are ordinarily seen as a matter of choice on the part of the observer. The

young people as well as the adults have the message of the billboard thrust upon them by all the arts and devices that skill can produce. In the case of newspapers and magazines, there must be some seeking by the one who is to see and read the advertisement. The radio can be turned off, but not so the billboard or street car placard. These distinctions clearly place this kind of advertisement in a position to be classified so that regulations or prohibitions may be imposed upon all within the class. This is impossible with respect to newspapers or magazines.' The Legislature may recognize degrees of evil and adapt its legislation accordingly.' 105 U.S. at 110, 15 Otto 100 (internal quotations and citations omitted). While this is an old case and is not cited as direct support for this decision, it remains a viable statement approving restriction of outdoor cigarette advertisements, and applies today. The U.S. Supreme Court has not reversed the *Packer Corp.* holding.

The plaintiffs cite *Vango Media v. City of New York*, 34 F.3d 68 (2nd Cir.1994) to support their position favoring preemption. The *Vango Media* decision struck down a city ordinance that required one anti-smoking message for every four cigarette advertisements on taxi cabs. The court held that this ordinance imposed conditions on cigarette advertisements and their contents, thereby directly impacting cigarette manufacturers. 34 F.3d at 74—75. The Second Circuit noted that New York City's ordinance "treads on the area of tobacco advertising, even if it does so at the edges." *Id.* at 74. *Vango Media* is clearly distinguishable from the instant case. Here, there is no imposition of a duty or condition for cigarette advertisements, only a limitation on their location and format. In *Vango Media*, not only were tobacco companies required to display one public health message for every four tobacco advertisements, they were also required to submit their health messages to the Department of Health for screening and, then for approval by the Taxi and Limousine Commission for conformity with its standards. 34 F.3d at 69.

For these reasons and the reasons stated by the defendants, the defendants' motion for summary judgment should be granted, and the plaintiffs' motion should be denied, on this issue. The plaintiffs' first cause of action should be dismissed. The court declines to address the parties' arguments pertaining to the Commerce Clause as that discussion is not necessary to reach the above conclusion.

*3. Whether TOTAR is preempted by Washington's Tobacco—Access to Minors Act ("State Act"). RCW 70.155 et seq?*

 In the plaintiffs' fifth cause of action, they claim that TOTAR is preempted by state law, specifically Tobacco—Access to Minors Act, RCW 70.155 *et seq.* (hereinafter referred to as the "State Act"). The defendants argue that the State Act expressly does not preempt local regulations pertaining to the advertisement or promotion of cigarettes. The defendants also argue that TOTAR does not conflict with the State Act. The defendants seek summary dismissal of this claim.

The plaintiffs argue that the State Act expressly preempts local regulation of *indoor* advertisements. The plaintiffs contend that the State Act's goal is to restrict access to tobacco products by minors in various ways, including restricting cigarette sales in vending machines, sampling promotions, and prominently displayed warnings regarding the prohibition on sales of tobacco products to minors. The plaintiffs cite to the legislative history of the State Act to support their position. They seek summary judgment on the State Act's preemption of TOTAR.

 Under Washington state law, local governments have the right to enact ordinances prohibiting the same acts as the state law as long as the state law was not intended to be exclusive and the local ordinance does not conflict with general state law. *Brown v. City of Yakima*, 116 Wash.2d 556, 559, 807 P.2d 353 (1991) (citing Washington State Constitution, art. 11, § 11 and *Bellingham v. Schampera*, 57 Wash.2d 106, 109, 356 P.2d 292 (1960)). "Thus, the ordinance must yield to a statute on the same subject either if the statute preempts the field, leaving no room for concurrent jurisdiction, or if a conflict exists such that the two cannot be harmonized." *Id.* (citations omitted). If the state law "affirmatively expresses its intent, either

to occupy the field or to accord concurrent jurisdiction, there is no room for doubt." *Id.* 116 Wash.2d at 560, 807 P.2d 353.

A determination that state law does not preempt the field next requires a determination of whether the local ordinance directly and irreconcilably conflicts with the state law. *Id.* The test for conflict is "whether an ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." *Rabon v. City of Seattle,* 84 Wash.App. 296, 303, 932 P.2d 646 (1996) (citations omitted). "[A] local ordinance does not conflict with a state statute in the constitutional sense merely because the ordinance prohibits a wider scope of activity." *Brown,* 116 Wash.2d at 563, 807 P.2d 353 (citations omitted).

In this case, the purpose of the State Act is set forth in RCW 70.155.005 as follows:

> The legislature finds that while present state law prohibits the sale and distribution of tobacco to minors, youth obtain tobacco products with ease. Availability and lack of enforcement put tobacco products in the hands of youth.
>
> Federal law requires states to enforce laws prohibiting sale and distribution of tobacco products to minors in a manner that can reasonably be expected to reduce the extent to which the products are available to minors. It is imperative to effectively reduce the sale, distribution, and availability of tobacco products to minors.

In pertinent part RCW 70.155.130 states:

> This chapter preempts political subdivisions from adopting or enforcing requirements for the licensure and regulation of tobacco product promotions and sales within retail stores ... No political subdivision may: (1) Impose fees or license requirements on retail businesses ...; or (2) regulate or prohibit activities covered by RCW 70.155.020 through 70.155.080. This chapter does not otherwise preempt political subdivisions from adopting ordinances regulating the sale, purchase, use, or promotion of tobacco products not inconsistent with chapter 507, Laws of 1993 [RCW 70.155 *et seq.*].

This statute expressly preempts local governments from enacting ordinances regarding "the licensure and regulation of tobacco product promotions and sales within retail stores" with certain exceptions. The statute expressly does not preempt local governments from adopting ordinances not inconsistent with the rest of the State Act. Clearly, the Legislature envisioned concurrent jurisdiction. Despite the plaintiffs' contentions to the contrary, TOTAR does not affect the licensure and regulation of tobacco promotions and sales within the stores, as long as advertising cannot be seen from the street. Resolution 96–1997, Sec. 3.3, *supra* p. 1216–17. None of the restrictions in TOTAR forbids or permits any activity forbidden or permitted in the State Act. The fact that TOTAR places limitations on outdoor advertising not covered in the State Act does not create a conflict. The stated policies behind TOTAR square precisely with the State Act. Compare RCW 70.155.005 with Resolution 96–1997, Sec 2, 2.1–2.7.

For these reasons and the reasons stated by the defendants, the State Act does not preempt TOTAR. The defendants' motion should be granted and the plaintiffs' motion denied on this issue. The plaintiffs' fifth cause of action should be dismissed.

Therefore, it is hereby

**ORDERED** that Defendants' First Motions for Partial Summary Judgment (Dkt.# 34) is **GRANTED**. Plaintiffs' First, Fourth and Fifth Claims are **DISMISSED**. It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment on Federal Preemption, State Preemption and Agency's Exceeding the Scope of its Delegated Authority (Dkt.# 36) is **DENIED**.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.